IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CITY OF PHILADELPHIA,                         CIVIL ACTION
               Plaintiff,

      v.

S.C. JOHNSON & SON and                        NO.  25-6120
BIMBO BAKERIES USA,
               Defendants.

MEMORANDUM

HODGE, J.                                     April 30, 2026

The City of Philadelphia ("Plaintiff") has filed this case against Defendant Bimbo Bakeries USA ("Bimbo") and Defendant S.C. Johnson & Son, Inc. ("SCJ") (collectively, "Defendants"), for violations of the Consumer Protection Ordinance ("CPO") detailed in Philadelphia Municipal Code § 9-6300. (*See generally* ECF No. 1-5.) Plaintiff has filed a Motion to Remand the proceedings to the Philadelphia County Court of Common Pleas. (ECF No. 28 (the "Motion").) For the reasons that follow, the Court grants the Motion.

I.      BACKGROUND

    A.      Factual Background[1]

Plaintiff is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania. (ECF No. 1-5 ¶ 23.) SCJ is a Wisconsin corporation with its headquarters and principal place of business in Wisconsin. (*Id.* ¶ 25.) Bimbo is a Delaware corporation with its headquarters and principal place of business in Pennsylvania. (*Id.* ¶ 29.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

1

SCJ sells Ziploc bags in Philadelphia, and Bimbo sells bakery products in bread bags in Philadelphia. (*Id.* ¶ 14.) Ziploc bags are made of low-density polyethylene ("LDPE"). (*Id.* ¶ 27.) Bimbo's bread bags are always or almost always made of LDPE as well. (*Id.* ¶ 91.) The Society of Plastics Industry established a Resin Identification Code ("RIC") that categorizes plastics by resin type. (*Id.* ¶ 41.) The RIC symbols used to identify plastics uses the "chasing arrow" sign:



(*Id.* ¶¶ 41–42.) Defendants both use the same "standardized" "How2Recycle" label and the RIC sign featuring the "chasing arrows" symbol on all or almost all their products. (*Id.* ¶¶ 16, 95, 99.)

Plaintiff alleges that the LDPE products sold by Defendants are not effectively recyclable almost anywhere in the United States due to technical and economic realities because of their thin and flexible physical form and the lack of market for the recycled product. (*Id.* ¶¶ 17, 55, 56, 64.) But the "chasing arrow" symbol, Plaintiff alleges, is also associated with recyclability, and thus consumers get confused regarding the recyclability of the product when they see the chasing arrows sign because they do not associate it with the RIC classification system. (*Id.* at ¶¶ 41–42, 46.) Accordingly, Plaintiff alleges that SCJ and Bimbo are deliberately tricking consumers into thinking that the products can be recycled without contributing to plastic waste or environmental harm, and employing a campaign of parallel deceptive marketing because their plastic products are rarely recycled and consumers expect that products labeled with a recycling logo are recyclable on a meaningful scale. (*Id.* ¶¶ 32, 63, 216.)

Plaintiff asserts that this conduct comprises a violation of CPO 9-6302(1), which prohibits "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce directly or indirectly impacting one or more individuals in the City." (*Id.* ¶ 245.) Plaintiff alleges that the recycling-related language, symbols, and marketing tactics are unfair and/or deceptive within the meaning of the CPO. (*Id.* ¶¶ 250, 257, 258.) Plaintiff seeks declaratory judgment, an injunction to force Defendants to revise their marketing practices and cure misunderstandings, and damages. (*Id.* at ¶¶ 47–48.)

### B.    Procedural History

On September 24, 2025, Plaintiff filed suit in the Philadelphia County Court of Common Pleas pursuant to CPO § 9-6303. (ECF No. 1-5.) On October 27, 2025, SCJ filed a timely Notice of Removal to this Court pursuant to 28 U.S.C §§ 1441 and 1446 on the grounds of diversity jurisdiction under 28 U.S.C. § 1332(a). (*See generally* ECF No. 1.) In the Notice of Removal, SCJ asserts that the complete diversity requirement is met because Bimbo is fraudulently misjoined and the claims against it should be severed by the Court. (*Id.* at ¶ 28.) On December 5, 2025, Plaintiff filed the present Motion. (ECF No. 28.) On January 16, 2025, SCJ filed a Response in Opposition. (ECF No. 30.) Plaintiff filed its reply in support of the Motion on February 6, 2026. (ECF No. 31.) In addition, on February 26, 2026, Plaintiff filed a Notice of Supplemental Authority (ECF No. 32), to which SCJ responded on March 13, 2026 (ECF. No. 33).

## II.    LEGAL STANDARD

Pursuant to the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441. Removal of a suit from state court to federal court is proper only if the federal court would have otherwise had original subject matter

jurisdiction over the matter. *See id.* Federal courts have original subject matter jurisdiction on federal question or diversity grounds. *See* 28 U.S.C. §§ 1331, 1332. For diversity grounds, federal courts have original jurisdiction when the action meets the monetary amount in controversy and the party diversity requirements. *See id.* § 1332. Complete diversity is necessary, requiring that "every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). The parties' "diversity of citizenship must have existed at the time the complaint was filed and at the time of removal." *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (internal citation omitted).

The Third Circuit has held that "[t]he federal removal statute, 28 U.S.C. § 1441, is strictly construed, requiring remand if any doubt exists over whether removal was proper." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co.*, 779 F.3d 214, 218 (3d Cir. 2015). This statute is strictly construed because a "lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). Accordingly, the Third Circuit treats the removing party as "carr[ying] a heavy burden of showing that at all stages of the litigation the case is properly before the federal court." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). Pursuant to 28 U.S.C. § 1447, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added).

## III.    DISCUSSION

Plaintiff makes multiple arguments in the Motion that touch on the fundamental power of a court to determine its own jurisdiction. Primarily, Plaintiff asserts that the Court does not have subject matter jurisdiction over the present action, and thus the suit must be remanded.

Here, complete diversity of citizenship is lacking on the face of the complaint. Bimbo has its principal place of business in Pennsylvania and Plaintiff is a Pennsylvania municipal corporation; thus, there is no diversity jurisdiction. However, SCJ asserts that the claims against Defendants were fraudulently misjoined. Accordingly, it argues that the Court should sever Bimbo from this action so the Court can "preserve" its diversity jurisdiction under the doctrine of fraudulent misjoinder. As stated below, the Court is not persuaded and, thus, will not adopt the fraudulent misjoinder theory.

Fraudulent misjoinder, also known as procedural misjoinder, recognizes the power of a district court to sever claims against a non-diverse party that were egregiously misjoined to preserve a defendant's right to removal. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Off. Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). The *Tapscott* court, when articulating the doctrine for the first time, held that in cases where misjoinder is "so egregious as to constitute fraudulent joinder," it is permissible for a district court to sever the non-diverse party. *Id.* As grounds to justify the doctrine, the *Tapscott* court likened fraudulent *mis*joinder to the narrow exception of fraudulent joinder. *Id.* ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.")

Outside the Eleventh Circuit, no other Court of Appeals has adopted the fraudulent misjoinder doctrine. The Sixth, Eighth, Ninth, and Tenth Circuits have mentioned the doctrine, but refused to either adopt or reject the doctrine. *See Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 491 n.1 (6th Cir. 2013); *Graham v. Mentor Worldwide LLC*, 998 F.3d 800, 803 n.3 (8th Cir. 2021); *California Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 F. App'x 727, 729 (9th Cir. 2001); *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir.

2010). The Fifth Circuit issued a sharp critique of the doctrine and rejected it for being an "usurpation of the traditional ability of state courts to resolve procedural questions central to the administration of their cases." *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 816 (5th Cir. 2021).

The Third Circuit has not addressed fraudulent misjoinder. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, No. 11-3045, 2012 WL 1118780, at *3 n.4 (D.N.J. Apr. 3, 2012), *aff'd*, 751 F.3d 150 (3d Cir. 2014).[2] The district courts within this Circuit have taken various stances towards the doctrine. The doctrine has been adopted in large pharmaceutical product liability actions with a pending MDL. *See, e.g.*, *id.* at *4–6; *Weaver v. Am. Home Prods. Corp. (In re Diet Drugs Prods. Liab. Litig.)*, 294 F. Supp. 2d 667, 673 (E.D. Pa. 2003); *Chaney v. Gate Pharms., Inc. (In re Diet Drugs Prods. Liab. Litig.)*, No. 1203, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1990); *Breitner v. Merck & Co., Inc.*, No. 318CV15982, 2019 WL 316026, at *3 (D.N.J. Jan. 24, 2019); *Paddock v. Novartis Pharms. Corp.*, No. CV 25-407, 2025 WL 1908806, at *4 (D. Del. July 11, 2025), *R&R adopted*, 2026 WL 296245 (D. Del. Feb. 4, 2026). However, district courts in this Circuit have also rejected the doctrine in the pharmaceutical context, and almost uniformly reject it outside of this context. *See, e.g.*, *In re Plavix Prod. Liab. & Mktg. Litig.*, No. 3:13-cv-3610, 2014 WL 4954654, at *13 (D.N.J. Oct. 1, 2014); *Kaufman v. Allstate Ins. Co.*, No.

---

[2] SCJ's contends that the Third Circuit subtly approved the doctrine when they heard *In re Fosamax* on appeal. The lower court in *In re Fosamax* employed fraudulent misjoinder to sever the non-diverse party. *In re Fosamax*, 2012 WL 1118780, at *4–6. On appeal, no party contested fraudulent misjoinder, and the Third Circuit's decision not to address the issue should not be taken as green light to employ the doctrine. The Third Circuit merely stated that it saw "no reason to disturb" the district court's diversity jurisdiction conclusion. *In re Fosamax*, 751 F.3d 150, 156 n.10 (3d Cir. 2014). Only one district court in this Circuit has relied on the Third Circuit's non-action as reason to employ the doctrine. *See Paddock v. Novartis Pharms. Corp.*, No. CV 25-407, 2025 WL 1908806, at *4 (D. Del. July 11, 2025), *R&R adopted*, 2026 WL 296245 (D. Del. Feb. 4, 2026). This Court finds it unpersuasive to treat a footnote and a non-action by the Third Circuit as approval of the fraudulent misjoinder doctrine and acceptance of its application.

Civ. A. 07-6160, 2010 WL 2674130, at *8 (D.N.J. June 30, 2010); *Pennsylvania Emps. Benefit Tr. Fund v. Eli Lilly & Co.*, No. Civ. A. 07-2057, 2007 WL 2916195, at *11 (E.D. Pa. Oct. 5, 2007); *In re Paulsboro Derailment Cases*, No. 13-784, 2014 WL 197818, at *4 (D.N.J. Jan. 13, 2014). Here, the Court will join the many that have rejected the doctrine.

### A. Fraudulent Misjoinder Is an Impermissible Extension of Federal Jurisdiction.

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Here, the relevant statute permits defendants to remove cases if they comply with the strictures of the statute. 28 U.S.C. § 1441. The statute requires that the action be one where the federal courts would have had original jurisdiction, and in pertinent part, requires complete jurisdiction between the parties. *See id.* § 1441(a). The statute itself is strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). There is nothing in the statute that supports fraudulent misjoinder.

The Supreme Court has enumerated only one exception to sever a non-diverse party in the absence of facial diversity jurisdiction: fraudulent joinder. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 98–99 (1921). Given the Supreme Court's strict construal of the removal statute, this exception should be treated as a "'narrow exception' to the rule of complete diversity." *Campbell v. Stone Ins. Inc.*, 509 F.3d 667, 669 (5th Cir. 2007) (quoting *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)); *see also Hain Celestial Grp., Inc. v. Palmquist*, 146 S. Ct. 724, 735–36 (2026)[3] (Thomas, J., concurring) (casting doubt on the expansion of severance for improper

---

[3] Plaintiff filed a Notice of Supplemental Authority asserting that the Supreme Court's ruling in *Hain* resolves the dispute in this Motion. *Hain* dealt with the proper remedy for a district court's entering of final judgment after failing to cure a jurisdictional defect. 146 S. Ct. at 730–34. But neither party in *Hain* contested the joinder decision of the lower court, nor did they contest whether dismissal was required. *Id.* at 730. *Hain* did not address the means to which a district court can

joinder beyond "precedents concerned only [with] whether the plaintiff avoided federal diversity jurisdiction by bad faith or actual fraud"). In the Third Circuit, fraudulent joinder is found when "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *In re Briscoe*, 448 F.3d at 216 (quoting *Abels*, 770 F.3d at 32). If a court finds that joinder was "fraudulent," it may disregard the non-diverse defendant for jurisdictional purposes and dismiss them. *Id.*

Fraudulent joinder focuses on the "substantive deficiencies of a claim against a joined party, [while] fraudulent misjoinder focuses on procedural deficiencies of a party's joinder." *In re Fosamax*, 2012 WL 1118780, at *2. In fraudulent joinder, a court assesses whether the claim against a non-diverse defendant could be brought in state court by probing its viability. In cases where a court finds fraudulent joinder, the court can dismiss the non-diverse defendant because the parties must be "real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980). When a plaintiff alleges claims that have no "reasonable basis in fact" or lack "colorable ground[s]" of support, it shows that the party is not a real nor substantial party to the controversy. *In re Briscoe*, 448 F.3d at 215–16 (quoting *Abels*, 770 F.2d at 32). "It is as if the plaintiff added a person who did not exist" in the dispute before the court. *Alvarado v. Sweetgreen, Inc.*, 712 F. Supp. 3d 393, 410 (S.D.N.Y. 2024).

On the other hand, in fraudulent misjoinder, the claims against the non-diverse defendant are properly pled but they are purposefully included to defeat removal. *Id.* at 404. Instead of the court analyzing whether the claims are "fictive or properly pled," the court is asked to analyze the

---

dismiss a non-diverse defendant because it was presupposed that the dismissal of the non-diverse defendant was improper.

propriety of joinder law binding two colorable claims. *Id.* at 406. As "the Third Circuit has cautioned that fraudulent joinder should be interpreted narrowly," *In re Paulsboro*, 2014 WL 197818, at *4 (citing *Batoff v. State Farms Ins.*, 977 F.2d 848, 851 (3d Cir. 1992)), the Court will not adopt fraudulent misjoinder on grounds that is an extension of the rationale that justified fraudulent joinder.

**B.      The Third Circuit's Articulation of the Removal Statute Requires the Court to Resolve All Doubts in Favor of Remand.**

The Third Circuit has repeatedly directed district courts to remand cases to state courts when subject matter jurisdiction is in doubt. *Carlyle*, 779 F.3d at 218. Severance under fraudulent misjoinder is the only way that subject matter jurisdiction would be proper in the present case. Absent guidance from the Third Circuit that such a controversial doctrine would be permissible, the decision to proceed with severance is steeped with doubt. Doubt exists; therefore, remand is required.

Moreover, even if the doctrine were more broadly accepted, the lack of clarity in its application would also make prudent the remanding of the case to the state court. "[J]urisdictional rules should be clear." *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 14 (2015) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 321 (2005) (Thomas, J., concurring)). The fraudulent misjoinder doctrine has been characterized as an "unpredictable and complex jurisdictional rule." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (summarizing critiques of fraudulent misjoinder). Among the district courts within the Third Circuit that have rejected the doctrine, a common reason to do so was the confusion surrounding the doctrine. *See, e.g.*, *Kaufman*, 2010 WL 2674130, at *7; *In re Plavix*, 2014 WL 4954654, at *13 ("[T]he Court's review of the case law regarding the fraudulent misjoinder doctrine that has

9

emerged since Tapscott reveals enormous judicial confusion and inconsistencies engendered by the doctrine."). Some of the main points of confusion are discussed below.

        i.      Which Joinder Rules Govern?

There is much confusion across the circuits as to whether district courts should analyze misjoinder under the state joinder rules or under Federal Rule of Civil Procedure 20. *See, e.g.*, *Williams*, 18 F.4th at 817. Courts within the Third Circuit are split on this issue as well. *See Weaver*, 294 F. Supp. 2d at 673 (concluding that state joinder rules are the appropriate source of misjoinder law); *Brookside Banquets, LLC v. Selective Ins. Co.*, No. CV2108832, 2021 WL 6135940, at *4 (D.N.J. Dec. 29, 2021) (declining to adopt the doctrine but arguing, hypothetically, that Rule 20 would apply).

SCJ asserts that the "the distinction here is irrelevant because . . . Pennsylvania's permissible joinder rule (2229(b)) is substantively identical to Federal Rule 20(a)." (ECF No. 30 at 20 n.8 (citing *Siranovich v. Butkovich*, 76 A.2d 640, 643 (Pa. 1950)).) But this issue cannot be glossed over that easily because Federal Rule of Civil Procedure 81 directs a federal court to apply the federal rules of civil procedure after removal. This means that the federal court would need to assess the propriety of joinder made in state court through the lens of the federal rule. This reverses the proper sequence, as the federal rules only apply *after* jurisdiction has been established. *See also* Fed. R. Civ. P. 82 ("These rules do not extend . . . the jurisdiction of the district court."). Yet with fraudulent misjoinder, the federal rule is being used to establish jurisdiction. *Williams*, 18 F.4th at 817. This approach leads to a paradoxical outcome that warrants rejecting the doctrine.

If the correct answer is to apply the state joinder rule, another list of problems beyond just Rule 81 is created. A federal court follows the federal rules for procedural questions and state substantive law for legal questions in diversity cases. We, as Courts, do this very thing when

assessing fraudulent joinder by probing the viability of the claims against the non-diverse defendant under state substantive law. Yet, fraudulent misjoinder turns this hallmark of federal civil litigation on its head if state procedural rules are to be followed. *Alvarado*, 712 F. Supp. at 408. The application of a state's procedural rule is an uncommon occurrence in federal courts, and there are questions as to whether district courts can or should use state procedural law in light of Rule 81. *See, e.g.*, *In re Plavix*, 2014 WL 4954654, at *12 ("[N]othing in the jurisprudence of the Supreme Court suggests that matters of state civil procedure, including joinder of claims, are questions that implicate the subject matter jurisdiction of a federal court.").

Moreover, even if the rules are substantively the same, the underlying considerations that factor into any given joinder analysis differ between state and federal courts. The federal court system has different concerns "over efficiency and docket management as well as its own rules of procedure" that may lead to a federal court "not always answering [the joinder question] in the same way a state court would." *Alvarado*, 712 F. Supp. 3d at 408. This raises two related questions: (1) What happens if joinder is proper under state law but not under federal law? (2) What happens if a state court would deem joinder proper, but a federal court would not under substantively similar joinder rules? These questions implicate serious federalism concerns where federal courts may be unconstitutionally allowing removal of state court actions where the state would consider them properly joined and unable to be removed. These doubts make it prudent to leave this issue to the state court.

ii.    The Egregiousness Standard In Fraudulent Misjoinder

In creating the fraudulent misjoinder doctrine, the *Tapscott* court noted that mere misjoinder is not fraudulent misjoinder—a showing of egregious joinder is required. *Tapscott*, 77 F.3d at 1360. *Tapscott* did not establish when mere misjoinder crosses into the boundary of

impermissible and egregious misjoinder. Within the Third Circuit, district courts consider misjoinder used to "deprive [d]efendants of removal jurisdiction in federal court" as egregious. *In re Fosamax*, 2012 WL 1118780, at *5; *see, e.g.*, *Breitner*, 2019 WL 316026, at *4 ("Plaintiff's joinder was egregious [because] the complaint here was structured in a way to defeat diversity jurisdiction."). Yet, SCJ also points to case law that treats fraudulent misjoinder as any mere misjoinder that defeats jurisdiction, ignoring the egregious requirement articulated in *Tapscott*. (ECF No. at 20–21 (citing *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 147–48 (S.D.N.Y 2001)).) SCJ acknowledges the lack of clear rules in the doctrine but asserts that courts are sufficiently competent to make the necessary judgment calls to make the doctrine workable. (*Id.* at 18–19.) When facing such an expansion of federal jurisdiction, the standards should be well delineated. Such an unclear standard may not be applied, which weighs in favor of remand.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion to Remand. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

_____

HODGE, KELLEY B., J.